**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 15-1434**

WILLIAM HANBACK,

        Plaintiff - Appellant,

    v.

DRHI, INC.; D.R. HORTON, INC.,

        Defendants - Appellees.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. T. S. Ellis, III, Senior District Judge. (1:14-cv-01789-TSE-JFA)

Argued: March 22, 2016         Decided: April 28, 2016

Before NIEMEYER and MOTZ, Circuit Judges, and Max O. COGBURN, Jr., United States District Judge for the Western District of North Carolina, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Stephen Patrick Pierce, SUROVELL ISAACS PETERSEN & LEVY, PLC, Fairfax, Virginia, for Appellant. Jon Franklin Mains, JON F. MAINS & ASSOCIATES, Fairfax, Virginia, for Appellees. **ON BRIEF**: J. Chapman Petersen, SUROVELL ISAACS PETERSEN & LEVY, PLC, Fairfax, Virginia, for Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

William Hanback commenced this action against DRHI, Inc., for breach of a contract with which he sold DRHI a 2.14-acre parcel of land in Fairfax, Virginia. He seeks a declaratory judgment and $350,000 in damages.

The parties closed on the land contract in 2004, with DRHI paying Hanback $400,000 for the 2.14-acre parcel, a price based on the fact that 5 lots had been approved by the City of Fairfax for the parcel's development. When DRHI later purchased an adjacent parcel of land, it reconstituted its development plan to include the two parcels and thereby obtained City approval for a total of 15 lots on the combined parcels -- 5.5 lots on the original 2.14-acre parcel and 9.5 lots on the adjacent parcel -- which amounted to 5 more lots than would have been approved for the parcels separately.

In his complaint, Hanback contends that the 2.14-acre parcel that he sold to DRHI in 2004 directly enabled the development of these 5 additional lots. Stated otherwise, he alleges that the 2.14-acre parcel he sold permitted DRHI to obtain a "bonus density" of 5 additional lots on the combined parcels. Accordingly, he seeks compensation for the additional 5 lots in the amount of $70,000 for each lot.

The district court dismissed Hanback's breach-of-contract claim, concluding that "nowhere in the . . . Contract is there a

provision requiring that [DRHI] compensate [Hanback] based on lots built on subsequently-acquired <u>adjacent</u> property." We agree and therefore affirm.

The land contract between Hanback and DRHI provided that "[Hanback] is the owner of 2.14 acres of fee simple real property," which DRHI "is desirous of acquiring," and that "[Hanback] agrees to sell to [DRHI] [and] [DRHI] agrees to buy from Hanback the Property." The contract continued, "the Purchase Price for the Property shall be $70,000.00 per approved lot with a minimum of 6 lots. If only 5 or fewer than 5 lots are approved, the Purchase Price shall be $400,000 for the 2.14 acres." Finally, the contract provided that "[s]ettlement shall take place within thirty days after approval of final subdivision plans by the City of Fairfax or twelve months after execution of this Contract whichever occurs first." Following a state-court order granting specific performance, settlement took place in 2004, at which time Hanback transferred the deed to the 2.14-acre parcel to DRHI and DRHI paid Hanback $400,000 for the property based on the 5 lots that, at that time, had been approved.

While the contract did indicate that the price for the 2.14-acre parcel would be based on the number of lots approved by the City of Fairfax at the time of settlement, even under the redevelopment plan approved by the City in 2007 and the

3

subdivision plan approved by the City in 2010, no more than 5.5 lots were ever approved <u>for the 2.14-acre parcel</u>. Since 6 lots or more were never approved for that parcel, the price established by the contract for the 2.14-acre parcel remained $400,000, a sum that had been fully paid at the closing in 2004.

In arguing that he is entitled to compensation "for the bonus density his land permitted," Hanback concedes that the "parties certainly did not specifically address 'bonus density' in the 2000 contract." But he contends nonetheless that "[the parties] clearly expressed that payment was [to be] based on the number of lots 'permitted' and/or 'approved,'" with $70,000 to be paid for each additional lot. He fails to address, however, the fact that he sold DRHI only the 2.14-acre parcel and that, at most, only 5.5 lots were ever approved on that parcel. The additional 9.5 lots approved in the final subdivision plan were located on the adjacent parcel, which was not the subject of the land contract between Hanback and DRHI. The contract between Hanback and DRHI specifically defines the 2.14-acre parcel as "the Property" subject to the contract, and the "purchase price and payment" provision expressly concerns the purchase price "for the 2.14 acres." Nowhere in the contract is any adjacent parcel or "bonus density" mentioned.

Accordingly, we affirm the district court's ruling that Hanback failed to state a claim for breach of the land contract

4

between him and DRHI when he claimed compensation for lots approved on an adjacent parcel that he never owned and that was never mentioned in his contract with DRHI. We need not reach, therefore, Hanback's challenge of the district court's alternative ruling that his breach-of-contract claim is barred by the applicable statute of limitations.

With this conclusion, we also affirm the district court's dismissal of Hanback's claim for a declaratory judgment. Hanback's complaint asked the court to assess the full transactional history of the dispute between the parties, including the effect of related state-court judgments, and to declare his rights to "the amount owed to [him] . . . for the bonus density [DRHI] obtained using the [2.14-acre parcel]." But this is exactly what he sought in his breach-of-contract claim, which the district court properly dismissed. A declaratory judgment therefore would serve no "useful purpose in clarifying and settling the legal relations in issue." Centennial Life Ins. Co. v. Poston, 88 F.3d 255, 256 (4th Cir. 1996) (internal quotation marks and citation omitted); see also Medtronic, Inc. v. Mirowski Family Ventures, LLC, 134 S. Ct. 843, 849 (2014) (recognizing that the Declaratory Judgment Act is only "procedural" and does not create "substantive rights").

The judgment of the district court is accordingly

AFFIRMED.

5